McGREGOR W. SCOTT
United States Attorney
ROSANNE L. RUST
MICHAEL D. ANDERSON
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone:  (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:17-CR-00215 MCE |
| Plaintiff, | **UNITED STATES' RESPONSE TO DEFENDANT'S FORMAL OBJECTIONS AND SENTENCING MEMORANDUM** |
| v. | |
| CAMERON FOX, | |
| Defendant. | |

## I.      <u>INTRODUCTION</u>

The United States hereby submits its response to the defendant Cameron Fox's two formal objections (ECF No. 71), and its sentencing memorandum.  For the reasons detailed below, the United States asks the Court to overrule the defendant's two formal objections concerning the application of the $5,000 special assessment under the Justice for Victims of Trafficking Act of 2015 (JVTA) (18 U.S.C. § 3014), and the inclusion of the victim impact statement in the Presentence Investigation Report (PSR).

The United States also requests that this Court sentence the defendant to a 20-year prison sentence, followed by 25 years of supervised release.  A 20-year prison sentence is sufficient but not greater than necessary to achieve the goals set forth in the sentencing factors listed in 18 U.S.C. § 3553(a).  Pursuant to the Plea Agreement, the defendant must also make the same sentencing recommendation.  ECF No. 64 at 11.

## II.     RESPONSE TO DEFENDANT'S FORMAL OBJECTIONS

### A.     Application of the JVTA is Appropriate in This Case.

As noted in the United States' informal objections, the defendant's current financial situation does not preclude his ability to pay the $5,000 special assessment required by the JVTA for all non-indigent defendants.  The published cases evaluating the applicability of the $5,000 special assessment hold that it is appropriate where a defendant fails to meet his burden to show that he cannot pay that amount in the future.  *See United States v. Graves*, 908 F.3d 137, 142 (5th Cir. 2018); *United States v. Kelley*, 861 F.3d 790, 801 (8th Cir. 2017).  An able-bodied person can pay down $5,000 in installments over a period of years.  *See United States v. Strange*, 692 F. App'x 346, 349 (9th Cir. 2017) (unpublished).

The defendant will be able to earn money while in the custody of the Bureau of Prisons. Defendants sentenced to federal custody are generally required to work if medically able.  *See* https://www.bop.gov/inmates/custody_and_care/work_programs.jsp; https://www.bop.gov/inmates/custody_and_care/unicor_about.jsp.  Federal inmates are estimated to earn between $10 and $25 per month.  *See id.*; https://www.prisonerresource.com/work-assignment/inmate-work-assignments-federal-prison/.  Here, the defendant has not presented any evidence that he is unable to earn money while incarcerated.  He is in good health with no known current disabilities.  *See* PSR ¶ 65-68.  Thus, if sentenced to the 240-month sentence recommended in the PSR and by the parties, the defendant should be able to pay a very substantial amount of the $5,000 even before he is released from prison.  *See United States v. Haggard*, 41 F.3d 1320, 1329 (9th Cir. 1994) (upholding a fine where defendant made no showing of future inability to pay and could earn money while incarcerated).

The defendant will remain capable of earning money after his release from custody as well.  The PSR correctly notes that he will be unable to continue to work in certain fields, due to the nature of his conviction.  However, the defendant has a high school diploma, PSR ¶ 73, and will have access to vocational training through the Bureau of Prisons.  *See* https://www.bop.gov/resources/news/20140613_program.jsp.

1      Because the defendant has not met his burden to show that he will be unable to pay the $5,000

2  special assessment, the United States requests that the Court impose the special assessment, which the

3  Probation Officer recommends.  PSR ¶ 78.

4          **B.      <u>The Letter from the Victim's Family is Properly Included in the PSR.</u>**

5          As argued in the United States' informal objections, the letter submitted by the victim's father is

6  appropriate information the court should consider in imposing sentence.  It is either correctly considered

7  as a victim impact statement or as the defendant concedes in his formal objections, as information the

8  court can consider for the purpose of sentencing regardless of what title it receives.  ECF No. 71 at 4:4-

9  5.

10         First and foremost, the victim has requested that any communication about this case go through

11  her father, and that practice is specifically permitted by statute.  18 U.S.C. § 3771(d)(1) & §

12  3771(e)(2)(B).  The victim has a right to be heard at sentencing, *see, e.g.*, Rule 32(i)(4)(B) & 18 U.S.C.

13  3771(a)(4)), and that right is being exercised.  *See United States v. Matthew*, 449 F. App'x 542 (8th Cir.

14  2011) (rejecting defendant's argument that inclusion of the victim impact statements in the PSR from

15  the mother and stepfather of the child pornography victim, who was now an adult, constituted error

16  under 18 U.S.C. § 3771(e)).

17         Victim impact statements also speak clearly and directly to the statutory factors the Court is to

18  consider at sentencing.  *See* Rule 32(d)(2)(G).  The statements pertain to the nature and circumstances of

19  the offense.  Parents are often in a unique position to observe the aftermath that befalls their children

20  who are victimized.  *See, e.g., United States v. Weiner*, 518 F. App'x 358, 367 (6th Cir. 20113) ("the

21  testimony of the mother of Victim No. 2, defendant's most recent victim, was relevant to the

22  background, character, and conduct of the defendant as well as the § 3553(a) factors" regardless of

23  whether she was technically a victim within the meaning of Rule 32); *see also United States v. Case*,

24  434 F. App'x 522, 523 (6th Cir. 2011) (district court properly permitted defendant's sister-in-law and

25  mother-in-law to give victim-impact statements at sentencing in a receipt of child pornography case

26  although neither was a "direct victim" of his crime of conviction); *cf. United States v. Logan*, 187 F.3d

27  639 (6th Cir. 1999) (no error found where district court permitted "nine relatives of victims of the fire to

28  make highly emotional statements at the sentencing hearing").

As evidenced by the content of the letter submitted by the victim's father, the victim's parents have had to watch their child's life unravel in the wake of her victimization and there is no legal basis to exclude their observations.  Their observations are important, and despite defense counsel's baseless claim that they must not know certain details about the victim's past, the victim's father is aware of such matters the defense believes he is not.

Additionally, the PSR "must also contain . . . information that assesses any financial, social, psychological, and medical impact on any victim."  F. Rule of Crim. Proc. 32(d)(2)(B).  The letter submitted by the victim's father contains that exact type of information.  Furthermore, nothing in Rule 32(d)(3), which covers what must be excluded from the PSR, prohibits the inclusion of the letter in the sentencing process.

Regardless, U.S.S.G. § 1B1.4 further states that the court "may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law."  *Accord* 18 U.S.C. § 3661.  Indeed, the Supreme Court has long held that in fashioning a sentence, "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to kind of information he may consider, or the source from which it may come."  *United States v. Tucker*, 404 U.S. 443, 446 (1972).  This includes courts being allowed to "consider the widest possible breadth of information about a defendant" under 18 U.S.C. § 3661.  *Pepper v. United States*, 562 U.S. 476, 488 (2011).  Section 3661 provides that there is "[n]o limitation . . . on the information concerning the background, character, and conduct of a *person convicted of an offense* . . . for the purpose of imposing an appropriate sentence."  (emphasis added).

Here, the letter submitted by the victim's parent falls within this category.  And as the defendant admits, the Court can consider it for sentencing purposes and decide what, if any, weight to give it. While the United States believes the letter is an appropriate victim impact statement attached to the PSR for the reasons discussed above, if the Court disagrees, the United States requests that the Court still consider the letter's content in deciding what sentence to impose on the defendant.

///

///

///

### III.      SENTENCING RECOMMENDATION

#### A.      The Court Should Adopt the PSR's Guidelines Calculations.

The Probation Officer in the PSR has calculated a total offense level of 39 and a criminal history category of I, for an advisory sentencing range of 262 to 327 months imprisonment.  PSR ¶ 80.  Because the statutory maximum sentence in this case is 20 years, however, the applicable guidelines range becomes 240 months.  PSR ¶ 80.  The applicable Guidelines range is in Zone D making the defendant ineligible for probation.  PSR ¶ 84.  The total offense level calculations are based on the base offense level of 32; a 2-level increase because the offense involved a sexual relationship with the victim; a 2-level increase due the distribution of child pornography to the victim; a 4-level increase because the content portrayed sadistic of masochistic conduct or other depictions of violence; a 2-level increase for the use of a computer or interactive computer service; and a 3-level reduction for acceptance of responsibility.  *See* PSR ¶¶ 28-40.  The defendant's criminal history category is I.  PSR ¶ 54.  The defendant has not objected to these calculations, which are correct.  The Court should adopt the PSR's calculations.

#### B.      An Analysis of the § 3553(a) Factors Demonstrates that a Substantial Sentence of 240 Months in Prison Accompanied by a 25-Year Term of Supervision is Warranted in This Case.

A 20-year sentence, followed by 25 years of supervision, is the appropriate sentence in this case. That is the recommendation of the United States, the defendant, and the Probation Officer, and an application of the § 3553(a) factors supports that result.

As detailed in the PSR, the defendant's history and characteristics demonstrate that he is an opportunistic predator, who prefers underage female victims.  The defendant met the victim in this case online while the victim was still a minor.  Rather than being repulsed by that fact, or even wary, the defendant found the victim's underage status to be "better" than the alternative.  In fact, the defendant often referred to the victim in their communications as "jailbait."  The defendant also liked to think of her, and often called her, his "underage daughter."  However, the defendant did much more than simply communicate with the victim.  On four separate occasions, he met with the victim to have sex.  During at least two of those encounters, the defendant created child pornography of the victim, and he

1    distributed some of those images to her.  As detailed in the PSR (*see, e.g.*, PSR ¶ 45), and in the factual

2    basis to the Plea Agreement, the defendant's sexual encounters with the victim were often violent and

3    purposefully degrading.

4           The victim identified in this case is also not the defendant's only victim.  As discussed in the

5    PSR, the defendant previously had two sexual encounters with another minor when she was 16 and he

6    was well into his adulthood.  PSR ¶ 47.  Although the defendant was supposedly in a relationship with

7    another adult at the time, that did not stop the defendant.  Instead, the defendant picked this victim up

8    from a high school dance and took her back to his mother's apartment where he had sex with the 16-

9    year-old victim.

10          In addition to this, law enforcement searched the defendant's residence and storage locker.  In

11   those two locations, officers seized 13 DVDs that all listed "Barely Legal," "Young teen," and/or

12   extremely young girls engaged in sex acts.  Several other electronic devices were seized and reviewed,

13   revealing that the defendant possessed over 8,000 images of child pornography, some including toddlers,

14   and he had over 23 videos of child pornography.  On his cellphone, the defendant further had nearly

15   1,000 videos—most of which contained child pornography with females, ranging in age from

16   approximately 1-year-old to teenagers.  PSR ¶ 43.  At least one of those videos also contained bestiality,

17   and another depicted a baby being vaginally penetrated.  PSR ¶ 44.

18          Despite this history, in his interview with the probation officer, the defendant attempted to

19   minimize his culpability.  Although the defendant has pleaded guilty, he does not appear to appreciate

20   the gravity of his conduct, and instead, offers a series of excuses for possessing child pornography and

21   deciding to create child pornography of the victim in this case and distribute it to her.  Primary among

22   his excuses is that he claims to be "addicted to pornography" and asserts that he is a "sex addict."  PSR

23   ¶¶ 26, 68.  Such statements show that the defendant is attempting to diminish his actions, and such

24   behavior militates in favor of a 20-year sentence in order to deter the defendant from committing similar

25   crimes in the future, to promote in him a respect for the law and to protect the public from further crimes

26   by him.

27          Given the defendant's history of preying on young victims, whether it be in person or by

28   collecting child pornography online, and the need for deterrence, promoting respect for the law, and

1   protecting the public—especially young, vulnerable females—a 240-month sentence is necessary, as is a

2   25-year term of supervised release.

3                                              **IV.        RESTITUTION**

4          The PSR correctly notes that, at the time the PSR was prepared, the probation officer had not

5   received any restitution requests.  However, the United States is still in the process of gathering

6   information regarding potential restitution claims.  Given that potential restitution requests may still be

7   forthcoming, the United States requests that a separate restitution hearing be held by the Court at a later

8   date, so as to provide the United States time to obtain further documentation and information related to

9   restitution.

10                                             **V.        APPEAL**

11         By the terms of his plea agreement, the defendant has waived his right to appeal his conviction

12  and sentence.  He should be informed that such waivers are generally enforceable.  Further, the United

13  States hereby provides the defendant notice that should he file an appeal, this would be a breach of his

14  plea agreement and that the United States would have available to it the remedies for such breach as set

15  forth in the agreement.

16                                             **VI.       CONCLUSION**

17         Based on the foregoing, the United States respectfully recommends a Guidelines sentence of 240

18  months in prison, to be followed by a 25-year term of supervision.  The United States also respectfully

19  requests that a restitution hearing be set on October 3, 2019, at 10:00 a.m.

20

21                                                  Respectfully submitted,

22  DATED:  July 25, 2019                           McGREGOR W. SCOTT
                                                    United States Attorney
23
                                                    */s/ Rosanne Rust*
24                                                  ROSANNE L. RUST
                                                    MICHAEL D. ANDERSON
25                                                  Assistant United States Attorneys
                                                    For the UNITED STATES OF AMERICA
26

27

28